UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

――――

LANCE ADAM GOLDMAN,

                Plaintiff,                Case No. 1:16-cv-52

v.                                        Honorable Robert J. Jonker

KALAMAZOO COUNTY SHERIFF'S
OFFICE, et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kalamazoo County Sheriff's Department and Fuller. The Court will dismiss Plaintiff's complaint without prejudice against Defendants Timmerman, Oakland, Mitchell, Skinner, Mezsets, Swafford, Telmate, Unknown Party #3, Denoon, and Schreiner, for improper joinder. The Court will order service of the complaint against Defendants Unknown Party #1 and Unknown Party #2, if Plaintiff provides identifying information.

## Discussion

I.  Factual allegations

Plaintiff Lance Adam Goldman presently is incarcerated at the Kalamazoo County Jail (KCJ).  He sues the Kalamazoo County Sheriff's Office, Telmate (the KCJ phone and visit service provider), Unknown Party #3 (the KCJ food service provider), and the following employees of KCJ:  Captain (unknown) Timmerman; Sheriff (unknown) Fuller; Senior Classification Officer (unknown) Oakland; the unknown nurse or medical assistant identified as Unknown Party #1; male nurse Unknown Party #2; Officers M. Mitchell, M. Skinner, (unknown) Mezsets, (unknown) Swafford, Jr. and D. Denoon; and Sergeant R. Schreiner.

Plaintiff complains about a litany of issues involving his confinement at the jail between October 29, 2015 and January 14, 2016.  While some of his allegations identify individuals who are responsible for the alleged unconstitutional conduct, other allegations simply discuss his complaints without attribution to a particular Defendant.  According to the complaint, the KCJ consists of two parts.  The old part of the jail was constructed in early 1970.  The new part was added in 2010.  The booking area is located in the new part of the jail.  Plaintiff alleges that, at the time he was booked into KCJ, he was provided a pin number for use in the Telmate system, which provides a variety of inmate services:  telephone and text messaging services; visitation by videolink, either from a jail kiosk or from a remote location; law-library access; grievance processing; and an assortment of religious and educational services, state social services, television, music, and video services.  Under the Telmate system, inmates in the new part of the jail receive two free "local" 30-minute visitations by video connection.  (Compl., ECF No. 1, PageID.6.)  All other prisoner visitations cost $7.50 each, whether made from the local jail kiosk or from a remote location.  Such

visitations can only be conducted if the inmate is in a housing pod containing a kiosk. Telmate also provides certain Android Nexus tablet computers, which provide access to the non-visitation services. A prisoner can only use the tablets if he has a prepaid balance on his inmate account.

Plaintiff was extradited to Michigan from Polk County, Florida, on three counts of uttering and publishing, one count of false pretenses, one count of conspiracy to commit false pretenses, three counts of insufficient funds, and a probation violation. He arrived at KCJ on October 29, 2015. After his initial screening by an unknown security-classification officer, Plaintiff was placed in Pod 2, Cell 225, which is located in the new part of KCJ. His assigned pod contained three telephones, two kiosks, and five tablets.

Plaintiff alleges that, during the period during which he was held at the Polk County, Florida Jail, he lost a significant amount of weight, entering the jail at 150 pounds and dropping to 131 pounds by the time of his extradition. Plaintiff also was suffering pain associated with the weight loss, for which he was given pain medication. Plaintiff's medical records from the Polk County Jail were transferred to KCJ, along with Plaintiff. On October 31, 2015, Plaintiff sent a medical request via the kiosk at 11:01 a.m. In his request, Plaintiff noted that he had been experiencing rapid weight loss and associated pain. Unknown Party #1 responded, through Telmate, on November 1, 2015, asking questions about the problem. Plaintiff claims that the questions were merely a way of avoiding the request, because he believes that he had answered the questions in his initial request. Plaintiff submitted a second grievance about medical services on November 2, 2015. He was seen by a male nurse (Unknown Party #2) on November 3, 2015. Plaintiff complains that Defendant Unknown Party #2 was rude and failed to evaluate or treat Plaintiff. Plaintiff submitted a paper grievance on November 5, 2015.

Plaintiff contends that placement in the new part of KCJ was dependent on behavior. In addition, Pod 2 housed multiple inmates who, like Plaintiff, were jailed on out-of-county holds for probation violations. Plaintiff alleges that inmates in the new part of KCJ, including his cellmate, were warned that, if they were found guilty of two rule violations, they would be moved to the old part of KCJ.

While Plaintiff was housed in Pod 2, he allegedly discovered that the law library available through the kiosk was "inadequate." (*Id.*, PageID.12.) He complains that the system did not provide access to the Michigan Compiled Laws or to decisions of the Michigan appellate courts issued before 1996. On November 10, 2015, Plaintiff submitted a request through Telmate asking if the jail had a law library other than that available through the kiosk or tablet using Telmate. He was informed that no other law library was available. Plaintiff filed six grievances on November 20, 2015, complaining about the inadequacies of the law library. Telmate responded by adding the Michigan legislature's website, which contained the Michigan statutes, but the website initially was accessible only through the tablet, which required payment of a fee. After Plaintiff filed yet another grievance, however, the problem was corrected. Plaintiff filed another grievance on November 24, complaining that KCJ did not provide access to Michigan appellate decisions prior to 1996 or to decisions from other jurisdictions, such as Florida and North Carolina. Plaintiff's grievance was rejected.

On December 1, 2015, Plaintiff filed a grievance that the Telmate system discriminated against the poor and indigent, because access via the tablets to certain library, educational and religious services was restricted to those who could pay a charge. Kiosk access to these services remained free of charge. On December 5, 2015, Plaintiff began assisting other

inmates to submit grievances about the cold temperature of the cells and the small food portions. He alleges that KCJ began blowing cold air and serving unreasonably small portions in retaliation for his writing of grievances.

On December 7, 2015, all inmates housed in Pod 2, whom Plaintiff had assisted in filing grievances, were moved to the old part of KCJ (B-West).  Defendant Swafford, the KCJ grievance officer, told Plaintiff that he was being moved to B-West because of his "manipulation of the Telmate kiosk and tablets." (*Id.*, PgeID.15.)  He was placed in B-West, cell 7, which housed eight inmates and contained a toilet, sink and shower.  Plaintiff alleges that the other inmates in the cell were charged with violent or sex-related offenses, and all had originally been housed in the new part of KCJ.  Plaintiff argues that he was written-up for rules violations and that the transfer was retaliatory.  On December 9, 2015, he submitted a grievance on a Telmate tablet and a paper grievance, alleging that his transfer was retaliatory.  Plaintiff complained that he had been given a mattress with no stuffing, causing him to sleep on cold steel, which caused him great pain due to his chronic lumbar fracture.

Plaintiff next complains that remote visitation and other services such as text messaging, which were provided free of charge through the kiosks in Pod 2 and were not available in B-West.  He alleges that the difference in treatment violates the Equal Protection Clause and is retaliatory.  On December 12, 2015, Plaintiff submitted six separate grievances via the tablet, all of which complained about retaliation and the unequal provision of privileges to prisoners in different parts of KCJ.  He complains that he had two visitations with his mother by remote access while he was in Pod 2, but he has been unable to have such visits since being placed in B-West, because he has no access to a kiosk.  He complains that he missed out on the free holiday phone calls and text

messages offered through the kiosk to inmates in the new part of KCJ.  He filed two electronic grievances on December 25, 2015, complaining about this difference in treatment and about retaliation.  The grievances were never answered.

On December 14, 2015, Plaintiff submitted a paper grievance, complaining that Defendant Mitchell, a female officer, conducted inmate clothes-exchange, which required Plaintiff to undress in Mitchell's presence to turn over his clothing for cleaning.  Mitchell also performed surveillance rounds three times on December 14, 2015, once while Plaintiff was showering and visible through the clear plastic shower curtain.  Plaintiff filed a paper grievance on December 15, 2015.  The grievance was not answered.  On December 16, Defendant Mitchell again made rounds, once while Plaintiff was sitting on the toilet.  Defendant Skinner, another female officer, also made rounds on December 16, 2015, and she looked in Plaintiff's cell while he was in the shower and visible through the curtain.  During another surveillance round on December 16, Defendant Skinner saw Plaintiff sitting on the toilet while he was nude.  Plaintiff filed a grievance about Skinner that same day.  Defendant Skinner made rounds while Plaintiff was in the shower on December 17, 2015.  Defendant Mezsets, another female officer, made rounds on December 19 and 20, 2015, while Plaintiff was sitting on the toilet and in the shower, respectively.  Defendant Skinner again made rounds and saw Plaintiff come out of the shower on December 21, 2015.  Plaintiff filed a paper grievance on December 21, 2015, complaining that his rights were being violated by female officers conducting rounds while Plaintiff was in the nude.  He filed at least three other grievances on the issue by December 29, 2015.  The sergeant who answered the December 29 grievance indicated that it was lawful to have both male and female prison guards in opposite-sex housing.  Defendants

-6-

Mitchell and Mezsets made rounds on January 13 and 14, 2016, during which time Plaintiff was sitting nude on the toilet.

During Christmas week, December 21 through 27, 2015, KCJ turned on the heat, causing the cells to get very hot. Thereafter, the heat was turned off and the cells have been very cold, causing inmates' noses to be cold and to run. As a result, Plaintiff alleges, he became ill with a cold and sinus infection. He submitted paper medical requests on December 29 and December 30, 2015, and he contends that he has received no response or treatment. Plaintiff filed a paper grievance on December 30, complaining about the lack of response to his medical request.

Plaintiff complains that, since being moved to B-West, the mail he has sent to family and friends has not been received. He contends that Defendant Swafford has engaged in retaliation for Plaintiff's many grievances. Plaintiff also alleges that, since his move, he has not been provided any recreation or fresh air, which has caused him to feel chest/breathing pains. He submitted a medical request for those pains on December 17, 2015, but he has received no response. He submitted a paper grievance on December 19, 2015, complaining about the lack of response to his medical complaint. Plaintiff contends that the air circulation is poor or non-existent and that the air take-out vents are clogged, that black mold exists on the ceiling of the shower, and that the cell walls condense water from inmate showers and sweat, causing mildew and mold. Plaintiff also complains that he and other inmates have not been trained in the use of cleaning tools and chemicals, as required by O.S.H.A., and that they therefore are exposed to excessive chemical smells from the daily use of cleaning products, causing Plaintiff to lose his ability to smell other things.

Plaintiff alleges that jail staff and Defendant Swafford have conspired to either destroy or refuse to respond to his many grievances and requests. He also complains that his cell

-7-

rarely gets to use a tablet, which is shared by many other inmates in B-West. The tablet frequently either has a dead battery or is near the time to be recalled when it is available to his cell. Even if Plaintiff is able to gain access to the tablet, the only free services are for sending and receiving grievances and requests.

On December 31, 2015, Plaintiff submitted paper grievances, complaining that Defendant Denoon had pushed him and had used racial slurs against him, in retaliation for Plaintiff's grievances. Plaintiff also complained that Defendant Denoon allegedly moved Plaintiff from cell 7 to cell 6, where he was placed with a group of black males who had been labeled as "assaultive" and as gang members. (*Id.*, Page ID#30.) Plaintiff alleges that the gang members assaulted him and took his meals and mattress because he would not join the gang.

Plaintiff asserts that he has suffered physical pain from the failure to treat his medical conditions, as well as emotional stress and depression from the retaliation and the conditions of his confinement. He contends that the Kalamazoo County Sheriff Department and Sherriff Fuller are responsible for a poorly run jail, have failed to supervise employees, and have failed to provide adequate medical care. For relief, Plaintiff seeks compensatory and punitive damages, together with unspecified injunctive relief.

II.     Misjoinder of Claims and Parties

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as

many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the

analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is
> more than one party on one or both sides of the action.  It is not concerned with
> joinder of claims, which is governed by Rule 18.  Therefore, in actions involving
> multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in
> a single action only if plaintiff asserts at least one claim to relief against each of them
> that arises out of the same transaction or occurrence and presents questions of law or
> fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE &

PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778

(E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14,

2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted

by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or

amended complaint unless one claim against each additional defendant is transactionally related to

the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661

F. Supp. 2d at 778.  When determining if civil rights claims arise from the same transaction or

occurrence, a court may consider a variety of factors, including, "the time period during which the

alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged;

whether the same supervisors were involved, and whether the defendants were at different

geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F. 3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F. 3d 596, 603 (6th Cir. 1998). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F. 3d 1126, 1127-28 (5th Cir. 1997). Allowing a prisoner to file a complaint against different defendants concerning unrelated occurrences would "'defeat, or at least greatly dilute, the clear intent of the fee payment and three-strikes provisions of the statute.'" *Green v. Callahan*, No. 2:14-cv-11453, 2014 WL 1652335, at *3) (quoting *Walls v. Scott*, 1998 WL 574903, * 3 (N.D. Tex. Aug.28, 1998)); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner."); *Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing prisoner to assert unrelated claims against new defendants would defeat

-10-

purpose of the three-strikes provision of the PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

-11-

Dismissal of Plaintiff's unrelated claims would not cause gratuitous harm. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. All of Plaintiff's claims arose in late 2015 or early 2016. Plaintiff therefore will not be barred from pursuing his claims within the statute of limitations.

The Court therefore will look to Plaintiff's first set of factual allegations in determining which portion of the action should be considered related. Plaintiff's first claim involves the failure of Defendants Unknown Party #1 and Unknown Party #2 to quickly and effectively respond to his medical complaint, when he arrived at the KCJ from an out-of-state facility having lost a substantial amount of weight and suffering pain from the weight loss. Plaintiff has raised no further allegations against these Defendants. The only other Defendants named by Plaintiff in relation to the failure to adequately treat his medical claim are the Kalamazoo County Sheriff's Office and Sheriff Fuller, against whom Plaintiff makes only the most conclusory allegations, which the Court will address infra. As a consequence, Plaintiff's allegations against the remaining Defendants will be dismissed without prejudice for improper joinder.

III.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

-13-

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Court determines that, at this juncture, Plaintiff's allegations against Unknown

Party #1 and Unknown Party #2, the unidentified medical assistant and unidentified male nurse, are

sufficient to state a claim. The Court, however, lacks sufficient information to order service of the

complaint on those Defendants at this time.

Plaintiff fails to make specific factual allegations against Defendant Fuller, other than

his claim that Fuller generally failed to supervise his employees and presumably failed to conduct

an investigation in response to Plaintiff's grievances. Government officials may not be held liable

for the unconstitutional conduct of their subordinates under a theory of respondeat superior or

vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S.

658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional

violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567,

575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's

subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir.

2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

-14-

Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Fuller engaged in any active unconstitutional behavior.  Accordingly, Plaintiff fails to state a claim against Fuller.

Plaintiff also sues the Kalamazoo County Sheriff's Department.  The sheriff's department does not exist as a separate legal entity; it is simply an agent of the county.  *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988), and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (Mich. Ct. App. 1970)).

However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Kalamazoo County.  Kalamazoo County may not be held vicariously liable for the actions of its employees under § 1983.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 392 (1989), and *Monell*, 436 U.S. at 694).  Instead, a county is liable only when its official policy or custom causes the injury.  *Id.*

Plaintiff's allegations against the county rest exclusively on a theory of vicarious liability and therefore do not state a claim.  *Id.*  Plaintiff wholly fails to allege the existence of any policy or custom respecting medical treatment or any other constitutional violation.  As the Supreme Court has instructed, to demonstrate that a municipality had an unlawful custom, a plaintiff must show that the municipality was deliberately indifferent to "practices so persistent and widespread as to practically have the force of law."  *Connick*, 131 S. Ct. at 1359.  Plaintiff cites no prior incidents demonstrating a widespread pattern of any constitutional violation.  He merely suggests that such a pattern exists.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S.

at 555 (2007).  Plaintiff therefore fails to state a claim against Kalamazoo County.  Accordingly, the Court will dismiss the Kalamazoo County Sheriff Department and Kalamazoo County.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kalamazoo County Sheriff's Department (Kalamazoo County) and Defendant Fuller will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court concludes that service is appropriate on Defendants Unknown Party #1 and Unknown Party #2, though the Court lacks sufficient information at this time to order service of the complaint.  The remaining claims and Defendants will be dismissed without prejudice as improperly joined.

An Order consistent with this Opinion will be entered.


Dated:    February 22, 2016             /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE